UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GUYCHRISTIAN AGBOR,

Plaintiff,

v.

PRESIDENCY OF THE REPUBLIC OF EQUATORIAL GUINEA, TEODORO OBIANG NGUEMA MBASOGO, AND DOUGAN CHAMPION ARMONDO

Defendants.

------------------------------------------------------------x

Case No. 18-CV-8611

RECEIVED
SDNY PRO SE OFFICE
2019 MAY 10 PM 12:05

# MEMORANDUM IN SUPPORT OF MOTION TO SANCTION DEFENDANTS AND THEIR COUNSEL



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-10-19

1

## INTRODUCTION

Plaintiff GuyChristian Agbor Pro Se moves to have the court sanction under Federal Rule Civil Procedure 11 in connection of Plaintiff's Motion for reconsideration for the fraud committed when Defendants and their counsel of record submitted a motion for an Extension of Time to File Responsive Pleadings and pretending to serve court documents to plaintiff in bad faith.

## STATEMENT OF FACTS

Plaintiff's complaint stated that on or about June 2, 2012, Defendants, while in Houston, Texas, personally requested that Plaintiff negotiate with Miss Universe Organization to hold the 2013 Miss Universe Pageant in Equatorial Guinea. In exchange for Plaintiff's services, the complaint alleges the Defendants agreed to pay the Plaintiff a fee of $275,000.00 upon its receipt of a letter of intent or conditional offer/acceptance letter from Miss Universe Organization. Plaintiff alleges that, after engaging in several negotiations with Miss Universe Organization, on or about March 24, 2013, the Miss Universe Organization agreed to hold the 2013 Miss Universe Pageant in Malabo, Equatorial Guinea, subject to two conditions precedent: (1) host country pays full fees in the amount of $14 million dollars; and (2) host country has the necessary infrastructure to host the event. Plaintiff alleges that a non-binding letter of intent or conditional offer/acceptance was issued and delivered to President Obiang Nguema Mbasogo. On or about May 15, 2013, President Obiang Nguema Mbasogo requested clarification regarding the fee to be paid under the proposed agreement.

On about June 1, 2013, Mr. Dougan Champion Armondo, Advisor to President Obiang Nguema Mbasogo, requested Plaintiff to purchase cellphones for his office at the Presidency of Malabo Equatorial Guinea. Plaintiff alleges that ten (10) Galaxy S5 phones were shipped to Mr. Dougan via DHL on June 04 2013 (See DHL Bill of Lading attached to Plaintiff's complaint).

---

[1] Inherent and included in the argument that Plaintiff's service of process did not adhere to FSIA should be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) for insufficiency of process, and to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process.

On June 26, 2013, Plaintiff gave Mr. Dougan Champion Armondo twenty (20) additional cellphones. Further, Mr. Dougan Champion Armondo signed a sales agreement in New York on June 26, 2013.

Defendants were served with a copy of a complaint and summons on September 20, 2018 and decided to answer only on December 12 2018 after Plaintiff filed a motion for default Judgment Defendants argued that counsel was just hired on December 06, 2019 and falsely claimed that Plaintiff did not serve a copy of the summons. Defendants through their counsel never serve a copy of this specific motion requesting an Extension of Time to Plaintiff and Defendants' Counsel was hired since September 2018, not December 2018 and it will be an error and injustice to grant Defendants with their request of Extension of time.

## ARGUMENT

### I. DEFENDANTS AND THEIR COUNSEL OF RECORD MUST BE SANCTIONED FOR PROVIDING FALSE INFORMATION TO THIS COURT

#### A- Standard of Law

The Federal Rules of Civil Procedure provide for sanctions based on litigation misconduct. Courts also "possess certain inherent powers, not conferred by rule or statute ... to fashion an appropriate sanction for conduct which abuses the judicial process." See *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation and marks omitted). Courts have the inherent power to correct a fraud upon the court. Fraud upon the court exists where a litigant attempts to "improperly influence[ ] the trier" of fact, "lies to the court and h[er] adversary intentionally, repeatedly, and about issues that are central to the truth finding process," or "knowingly submit[s] fraudulent documents to the Court." *Passlogix, Inc. v. 2FA Tech., Inc.*, 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (citation and marks omitted). A district court has broad discretion in fashioning sanctions under its "inherent power to

manage its own affairs." See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002).

Discovery sanctions serve broad purposes, including: (1) to ensure "that a party will not benefit from its own failure to comply"; (2) "as specific deterrents [to] seek compliance with the particular order issued"; and (3) "as a general deterrent effect on the case at hand and on other litigation." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). In determining sanctions based on discovery misconduct, courts consider willfulness, duration of non-compliance, whether the non-compliant party had been warned of the consequences of non-compliance, and the efficacy of lesser sanctions. See *Dragon Yu Bag Mfg. Co. v. Brand Sci., LLC*, 282 F.R.D. 343, 345 (S.D.N.Y. 2012).

\*3 "[D]ismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," and should only be employed when a court is "sure of the impotence of lesser sanctions." *Dodson v. Runyon*, 86 F.3d 37, 39, 42 (2d Cir. 1996) (citation and marks omitted). Nonetheless, "when a party lies to the court and h[er] adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that [s]he has forfeited h[er] right to have h[er] claim decided on the merits." See *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).

## B- Discussion

### I. Rule 11

Rule 11 states that by signing a pleading, motion, or other paper, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document is submitted for a proper purpose, the legal claims are non-frivolous, and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "Rule 11 imposes a duty

on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for [a] claim ...." *Capital Bridge Co. v. IVL Tech., Ltd.*, 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007). It serves "to deter baseless filings." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (citation omitted).

A pleading violates Rule 11 where "a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law." *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994). An attorney also has an obligation not to "reaffirm[ ] to the court and advocat[e] positions contained in [prior] pleadings and motions after learning that they cease to have merit." Fed. R. Civ. P. 11 advisory committee's note. Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions ...." Fed R. Civ. P. 11(d).

In enforcing Rule 11, a court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule." Fed. R. Civ. P. 11(c)(1). A represented party may be sanctioned if she "had actual knowledge that the filing of the papers constituted wrongful conduct, e.g. the papers made false statements or were filed for an improper purpose." *Ilkowitz v. Durand*, 2018 WL 1595987, at *19 (S.D.N.Y. Mar. 27, 2018) (citation omitted). A court "resolves all doubts in favor of the signer." *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986). "Courts impose Rule 11 sanctions with discretion and caution." See *Robeldo v. Bond No. 9*, 965 F. Supp. 2d 470, 478 (S.D.N.Y. 2013). Here, Defendants and their counsel misrepresentation that Counsel was hired on December 06, 2018 when they all were aware of this lawsuit since the end of September 2018 is a conduct sanctionable under Rule 11. By filing the motion to request an extension to file their responsive pleadings out of time and providing fraudulent argument as to when counsel was hired should be sanctioned under Rule 11. Not serving Plaintiff on purpose and intentionally with the appropriate copies of a motion should also fall under Rule 11. "Beyond the powers conferred expressly by rule and statute, a federal court

has inherent power to sanction a party for bad faith litigation conduct." See *Cerruti 1881 S.A. v. Cerruti, Inc.*, 169 F.R.D. 573, 582–83 (S.D.N.Y. 1996); see also *Briese Lichttechnik Vertriebs GmbH v. Langton*, 2011 WL 280815, at *8 (S.D.N.Y. Jan. 10, 2011) ("[E]ven in the absence of [a court] order the court may impose sanctions for discovery misconduct as an assertion of its inherent powers."). "Our judicial system generally relies on litigants to tell the truth ...." *McMunn*, 191 F. Supp. 2d at 445. Therefore, "[f]raud upon the court ... seriously affects the integrity of the normal process of adjudication." *Hargrove v. Riley*, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (citation and marks omitted). "[T]ampering with the administration of justice ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." See *Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)). A litigant must prove fraud upon the court by clear and convincing evidence. *Passlogix*, 708 F. Supp. 2d at 393. Defendants must establish the opposing party "has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case." *McMunn*, 191 F. Supp. 2d at 445 (citation omitted). A court also considers (1) if the misconduct was performed intentionally and in bad faith; (2) whether it prejudiced the injured party; (3) if there is a pattern of misbehavior; (4) whether and when the misconduct was corrected; and (5) whether it is likely to continue. *Passlogix*, 708 F. Supp. 2d at 394.

Here, all these factors enumerated above are present, Defendants and their counsel acted intentionally and in bad faith, plaintiff was prejudiced because the court granted Defendants motion of Extension after Defendants' counsel intentionally failed to serve plaintiff with a copy of their motion for extension, and after lying in bad faith, the behavior has continued and now witnesses are scare to come forward because Counsel has informed Defendants that witnesses have submitted two declarations in support of both contracts and as to when defendants and their counsel became aware of the lawsuit.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully asks this court to sanction defendants and their counsel accordingly.

05/10/19
Dated

Name: Guy Christian AGBOR

Address: 231 W 148th Street #5L

Telephone Number (if available): 917-399-4688

Signature

Prison Identification # (if incarcerated)

City / State / Zip Code

E-mail Address (if available)

# LIST OF EXHIBITS:

**A** – Declaration of Pedro Micha Ayekaba

**B**-Declaration of Jean Charles Takoua

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUYCHRISTIAN AGBOR <br><br> Plaintiff(s), <br><br> vs. <br><br> THE PRESIDENCY OF THE REPUBLIC OF EQUATORIAL GUINEA, TEODORO OBIANG NGUEMA MBASOGO, DOUGAN ARMANDO CHAMPION <br><br> Defendant(s). | Case Number: 18 CV 8611 <br><br> **DECLARATION OF PEDRO MICHA AYEKABA** <br><br> **IN SUPPORT OF THE EXISTENSE OF THE ORAL AGREEMENT AND THE CELLPHONES CONTRACT BETWEEN Mr. AGBOR AND THE DEFENDANTS** |

I, Pedro Micha Ayekaba declare as follows:

I am an executive transporter /chauffeur and National of Equatorial Guinea, and I drive officials from the Republic of Equatorial Guinea (Ministers, and other officials) to the United Nations in New York since 2008, and I am not a party to this lawsuit between Plaintiff and the Defendants and I have been a witness to several transactions between Mr. GUYCHRISTIAN AGBOR and Mr. OBIANG NGUEMA MBASOGO, as well as with Mr. DOUGAN CHAMPION ARMANDO. And I met Mr. GUYCHRISTIAN AGBOR since 2009 as he was providing various services to Permanent Mission of Equatorial Guinea and to the President's Family.

1

1. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. That Mr. GUYCHRISTIAN AGBOR asked me sometime in June 2013 to give him a ride to the DHL office at 200 W 39th Street to ship 10 galaxy phones to Mr. Dougan Champion Armando in Malabo Equatorial Guinea but I couldn't because I had to go back to white Plains to pick up the Ambassador's wife and bring her to Manhattan.

3. That I was also present when Mr. Dougan Champion Armando came to New York in June 2013 with the First Lady of Equatorial Guinea and during his trip he was moving around with Mr. GUYCHRISTIAN AGBOR.

4. That on June 26, 2013 in the morning Mr. GUYCHRISTIAN AGBOR show me approximately 20 cellphones in two plastic bags as I was downstairs at the Millennium Hotel at 45th Street and the UN as he was going upstairs to Mr. Dougan Champion Armando. I was one of the drivers assigned to drive ministers accompanying the First Lady.

5. That everyone at the Permanent Mission of Equatorial Guinea knew about these phones sold by Mr. AGBOR to Mr. Dougan at the Presidency as well as the fact that Mr. AGBOR was never paid.

6. That as I have seen Mr. Obiang Nguema Mbasogo speak in apartheid to Mr. GUYCHRISTIAN AGBOR several times at the Permanent Mission without knowing what they were talking about. But I also know that Mr. Obiang has asked Mr. AGBOR to work with the Ambassador on some confidential matters.

2

7. That, I have also seen Mr. Mareco Edwards at the Permanent Mission of Equatorial Guinea meeting with Ambassador Anatolio Ndong Mba around September, 2018, when President Obiang and Mr. Dougan Champion was here in New York and I was told that he was the lawyer hired to defend Mr. Obiang Nguema Mbasogo against Mr. GuyChristian Agbor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on *[date]* 1/16/19

Signature: _____

Printed name: _____ PEDRO MICHA AYEKABA _____

Address: _____ 8 WYANOKE STREET WHITE PLAINS NY 10606

Phone Number: _____ 646-289-0113 _____

E-mail Address: _____ mincha73@hotmail.com _____

3

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUYCHRISTIAN AGBOR <br><br> Plaintiff(s), <br><br> vs. <br><br> THE PRESIDENCY OF THE REPUBLIC OF EQUATORIAL GUINEA, TEODORO OBIANG NGUEMA MBASOGO, DOUGAN ARMANDO CHAMPION <br><br><br> Defendant(s). | Case Number: 18 CV 8611 <br><br> DECLARATION OF JEAN CHARLES TAKOUO <br><br> IN SUPPORT OF THE EXISTENSE OF THE ORAL AGREEMENT AND THE CELLPHONES CONTRACT BETWEEN Mr. AGBOR AND THE DEFENDANTS |

I, Jean Charles Takouo declare as follows:

I am an executive transporter /chauffeur and a United States citizen, and I officially drive the Ambassador of Equatorial Guinea to the United Nations in New York since 2005, and I am not a party to this lawsuit between Plaintiff and the Defendants and I have been a witness to several transactions between Mr. GUYCHRISTIAN AGBOR and Mr. OBIANG NGUEMA MBASOGO, as well as with Mr. DOUGAN CHAMPION ARMANDO. And I met Mr. GUYCHRISTIAN AGBOR since 2008 as he was providing various services to Permanent Mission of Equatorial Guinea, to the Embassy in Washington DC and to the President's Family.

1

1. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

2. That on June 04 2013 I gave a ride to Mr. GUYCHRISTIAN AGBOR the DHL office at 200 W 39th Street to ship 10 galaxy phones to Mr. Dougan Champion Armando in Malabo Equatorial Guinea.

3. That I was also present when Mr. Dougan Champion Armando came to New York in June 2013 with the First Lady of Equatorial Guinea and during his trip he was moving around with Mr. GUYCHRISTIAN AGBOR.

4. That on June 26, 2013 in the morning Mr. GUYCHRISTIAN AGBOR did show me approximately 20 cellphones in two plastic bags as I was downstairs at the Millennium Hotel at 45th Street and the UN as he was going upstairs to Mr. Dougan Champion Armando.

5. That everyone at the Permanent Mission of Equatorial Guinea knew about these phones sold by Mr. AGBOR to Mr. Dougan at the Presidency as well as the fact that Mr. AGBOR was never paid.

6. That as I have seen Mr. Obiang Nguema Mbasogo speak to Mr. GUYCHRISTIAN AGBOR in September 2012 and several other times at the Permanent Mission without knowing what they were talking about.

7. That, I also drove Mr. AGBOR and Mr. Anatolio Ndong Mba the Ambassador to the Saint Regis Hotel on 55th Street twice, and Mr. AGBOR later told me that it was to meet with the people of Miss Universe.

8.       That, I have also seen Mr. Mareco Edwards at the Permanent Mission of Equatorial Guinea meeting with Ambassador Anatolio Ndong Mba around September 28, 2018, and was told that he was the lawyer hired to defend Mr. Obiang Nguema Mbasogo against Mr. GuyChristian Agbor.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on *[date]* 01-16-19.

Signature: _____

Printed name: _____ JEAN CHARLES TAKOUO _____

Address: _____ 461 Riverdale Avenue Yonkers 10705 _____

Phone Number: _____ 914-500-5068 _____

E-mail Address: _____ Jeancharles73@yahoo.com _____

3